UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY MOSE, JR., ET AL

VERSUS

KEYBANK NATIONAL ASSOCIATION

CIVIL ACTION

NO. 11-162-JJB-SCR

**RULING ON PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANT'S COUNSEL**

This matter is before the Court on Plaintiffs' Motion (doc. 19) to Disqualify Jones Day as Defendant's Counsel. Defendant has filed an opposition (doc. 21). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court DENIES Plaintiffs' motion.

**Background**

In July 2006, Defendant Keybank National Association ("Keybank") contracted with developers ("the Developers") to loan over $170 million for the construction of a massive mixed-residential-and-commercial development ("the Development"). Soon thereafter, the Developers began to suffer from budget shortfalls. As a result, Developers opted to convert some of the Development's apartments into condominiums and sought Keybank's contractually required approval to do so. In support of their proposal, the Developers submitted documents to Keybank which were reviewed by Scott Specht ("Specht") and Michael Lee ("Lee") of Jones Day. Ultimately, Keybank approved the conversion and thereafter, the unfinished units were sold to Plaintiffs. However, the

1

Development continued to be over-budget, and, in 2009, all construction ceased, leaving much of the Development uncompleted. As a result, the Plaintiffs paid far more for their condominiums than they ended up being worth.

On March 18, 2011, Plaintiffs filed suit against Keybank alleging that it knew the project could not be completed but nonetheless approved the conversion and the marketing and sale of the condominiums ("the Condo Marketing Scheme"). On May 31, 2011, attorneys at Jones Day, Samantha R. Mandell ("Mandell") and Janine Cone Metcalf ("Metcalf") filed motions (docs. 11 & 13, respectively) to enroll as Keybank's counsel, which were granted that same day (doc. 14). At that time, Jones Day had been serving as Keybank's counsel in various suits surrounding the development for nearly two years.

On June 15, 2011, Plaintiffs filed their Motion (doc. 19) to Disqualify Jones Day as Keybank's counsel. Plaintiffs assert that Jones Day should be disqualified because Specht and Lee may be called to testify as to the circumstances surrounding the approval of the Condo Marketing Scheme and may tactically and unfairly try to assert attorney-client privilege. In addition, Plaintiffs assert that, to the extent that Jones Day participated in the alleged fraud, it may be made a third-party defendant. If so, Plaintiffs claim, Jones Day's representation of Keybank may be materially limited in violation of the Louisiana Rules of Professional Conduct ("LRPC").

On July 6, 2011, Keybank filed its opposition (doc. 21). Keybank asserts that disqualification is inappropriate because Plaintiffs have not proven that an

actual conflict of interest exists, either due to the possibility of Jones Day acting as a witness or being named a third-party defendant. In addition, Keybank asserts that disqualifying Jones Day as counsel will not affect the proceedings because (1) even as a former client, Keybank may assert attorney-client privilege and prevent Jones Day from testifying; and (2) to the extent that discussions between Keybank and Jones Day regarded mere business advice or were made in furtherance of a crime or fraud, they are not protected by the attorney-client privilege.

Motions to disqualify counsel are "generally disfavored" and "require a high standard of proof" so as to not deprive a party of its chosen counsel. *Fed. Deposit Ins. Corp. v. United States Fire Ins. Co.*, 50 F.3d 1304 (5th Cir. 1995); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 3845228, at *3 (E.D. La. Aug. 13, 2008). According to LRPC 3.7(b), "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." LRPC 1.7(a) states that a lawyer shall not represent a client if "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." However, even if such a risk exists, the lawyer may nonetheless represent the client if (1) the lawyer reasonably believes that he will be able to provide competent and diligent representation; (2) the representation is not prohibited by law; (3) the representation does not involve claims against clients;

and (4) each client gives informed consent, confirmed in writing. LRCP 1.7(b). Indeed, the United States Court of Appeals for the Fifth Circuit has found that conflicts of interest between an attorney and client should be settled by those parties and has noted the danger of allowing the opposing party to control the client's choice of counsel:

> *Ideally, conflict of interest problems should be settled between the attorney and his client. Where an attorney's testimony may prejudice only his own client, the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness. . . .* [A]n opposing party [may] bring conflict of interest matters to the attention of the court [but] "[s]uch an objection should be viewed with caution, however, for it can be misused as a technique of harassment. . . ." *A tortured justification for disqualification such as that offered by [Defendant] premised on a purported possible conflict of interest sometime in the future, suggests not so much a conscientious professional concern for the profession and the client of the opposing counsel as a tactic designed to delay and harass.*

*F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1315 (5th Cir. 1995) (emphasis added). *See also CEF Funding, LLC v. Sher Garner Richter Klein & Hibbert, LLC*, 2010 WL 2773116, at *2 (E.D. La. July 9, 2010) (stating that a "court must be especially sensitive to potential abuse when, as here, the party seeking disqualification is also the one wanting to call the attorney as a witness"). Any disqualification must be "linked to an actual, real conflict rather than an imaginary

one." *In re: Complaint of Cardinal Servs., Inc.*, 2006 WL 2089925, at *3 (W.D. La. July 21, 2006).[1]

The attorney-client privilege permits a client to obtain candid legal advice by allowing a client who invokes the privilege to prevent his attorney from testifying as to the content of their communications. *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). Courts have made it clear that the privilege belongs to the client and that a client may prevent not only its current counsel from revealing the content of their communications, but its *former* counsel as well. *Employers Mut. Cas. Co. v. Maison Heidelberg, P.A.*, 2011 WL 1496253, at *2 (S.D. Miss. April 20, 2011); La. Evid. Code Arts. 506 & 508. However, the attorney-client privilege has its limits and does not protect (1) the facts underlying the communication;[2] (2) communications either not initiated by the client or initiated

---

[1] According to the Fifth Circuit court:

> Unless an impermissible conflict of interest exists between a testifying lawyer and her client, Model Rule 3.7 . . . does not mandate the vicarious disqualification of the lawyer's firm. . . . [I]t is possible that, sometime in the future, the interests of [the lawyer] and [her client] might diverge. . . . [The party moving for disqualification] contends that this potential conflict of interest between [the attorney] and her client requires the disqualification of [the attorney] and the imputed disqualification of her entire firm. We find that the remote possibility that [the attorney] and [her client] may eventually find themselves at odds is much too tenuous a thread to support the burdensome sanction of law firm disqualification.

*U.S. Fire Ins. Co.*, 50 F.3d at 1313-14.

[2] The attorney-client privilege only applies to communications rather than the facts underlying the communication. *Upjohn Co.*, 449 U.S. at 395-96. That is, a party cannot conceal a fact simply by revealing it to his lawyer. *Id.* at 396.

5

by the client to obtain something other than legal advice;[3] and (3) communications sought in furtherance of criminal or fraudulent conduct.[4]

The Court finds that disqualification is inappropriate here. With regard to potential conflicts, the Fifth Circuit has made clear that conflict of interests are generally best-settled between the client and his attorney and that the party moving for disqualification must meet a "high degree of proof" to show that an "actual conflict"—and not some hypothetical one—exists. *U.S. Fire Ins. Co.*, 50 F.3d at 1313-14; *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 3845228, at *3. That members of Jones Day might be made third-party defendants at some unknown point in the future is pure conjecture and may not underlie a disqualification. *See id.*

Moreover, though Specht and Lee may serve as witnesses at trial, Mandell and Metcalf are representing Keybank in this litigation. The LRPC expressly allow a "lawyer [to] act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness" unless "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." LRCP 3.7. However, even in these instances, a court will

---

[3] Courts have distinguished between legal communications—communications between an attorney and a client, initiated by the client for the purpose of the client's securing legal advice—and business communications—communications in which the attorney performs some other service for the client. *Upjohn Co.*, 449 U.S. at 395-96; *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984).

[4] *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986); *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

not deprive a party of its choice of counsel if the lawyer reasonably believes the conflict will not affect his ability to represent the client and the client agrees to the representation, along with other inapplicable caveats. LRCP 1.7(b). Plaintiffs have not satisfied the Court that Mandell and Metcalf's representation of Keybank will in any way be limited by the prospect of Specht and Lee appearing as witnesses. Even if it did, Keybank could waive the conflict simply by consenting to the representation. LRCP 1.7(b).

Moreover, even if Mandell and Metcalf were disqualified, Keybank could still assert attorney-client privilege over its communications with Specht and Lee. The attorney-client privilege belongs to the client, rather than the attorney, and it applies not only to the client's present attorney but to the client's *former* attorney. *Maison Heidelberg, P.A.*, 2011 WL 1496253, at *2. Thus, regardless of who replaced Mandell and Metcalf as counsel, Keybank would be entitled to assert attorney-client privilege over his legal communications with Specht and Lee. Additionally, to the extent that Specht and Lee gave Keybank non-legal advice or advice in furtherance of Keybank's allegedly fraudulent scheme to build, market and sell the Development's condominiums, those communications are not protected by the attorney-client privilege. *Upjohn Co.*, 449 U.S. at 395-96. Finally, the attorney-client privilege would only protect communications between Specht and Lee and Keybank for the purpose of obtaining legal advice; it would not protect the facts underlying those communications. *Id.*

7

**<u>Conclusion</u>**

Accordingly, the Court hereby DENIES Plaintiffs' Motion (doc. 19) to Disqualify Jones Day as Defendant's Counsel.

Signed in Baton Rouge, LA this 13th day of July, 2011.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**