UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY MOSE, JR., ET AL

VERSUS

KEYBANK NATIONAL ASSOCIATION

CIVIL ACTION

NO. 11-162-JJB-SCR

### **RULING ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant's Motion (doc. 9) to Dismiss. Plaintiffs have filed an opposition (doc. 18) to which Defendant filed a reply (doc. 20). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Defendant's motion.

### **Background**

In July 2006, Defendant Keybank National Association ("Keybank") contracted with developers ("the Developers") to loan over $170 million for the construction of a massive mixed-residential-and-commercial development. Soon thereafter, the Developers began to suffer from budget shortfalls. According to Plaintiffs, the Developers and Keybank knew that the project could not be completed and that the Developers would be unable to repay their loans.[1] In response, the Developers decided—and Keybank agreed—to convert some of the Development's apartments into condominiums. According to Plaintiffs,

---

[1] Plaintiffs allege that Keybank knew the project could not be completed because the Developers faced numerous unpaid liens and lawsuits and Keybank refused to increase the loan amount by $10,000,000 despite that it knew the project was approximately $22,000,000 over-budget.

1

Keybank "controlled" the condo marketing scheme by agreeing to release its security interest in any condominiums sold by the Developers in exchange for power of attorney over the condominiums and the right to approve any condominium offering document. Thereafter, the Developers sold condominiums to Plaintiffs; Plaintiffs did not have any contact nor did they sign any contracts with Defendant during the sales process. The proceeds from the sales were placed in an escrow account until a minimum number of sales were made, at which point Keybank received approximately $10 million. However, the Development continued to be over-budget, and, in 2009, all construction ceased, leaving much of the Development uncompleted. As a result, the Plaintiffs' condominiums were worth far less than they paid for them.

On March 18, 2011, Plaintiffs filed suit against Keybank. Plaintiffs allege that Keybank approved the conversion and spearheaded the marketing and sale of the condominiums, despite that it knew the development could not be completed. Plaintiffs assert the following causes of action against Keybank: (1) fraud in concealing the financial problems associated with the development; (2) negligent representation of the financial health of the development; (3) unjust enrichment; (4) detrimental reliance.

On May 23, 2011, Defendant filed its Motion (doc. 9) to Dismiss. Defendant asserts that, as a lender, it owed no legal duty to Plaintiffs to disclose the financial condition of the Developers or to refrain from instituting foreclosure proceedings against them.

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6) a federal district court should dismiss the plaintiff's complaint if it "fails to state a claim upon which relief can be granted." To state a valid claim for relief, plaintiff's complaint must contain sufficient factual allegations that, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009). That is, a plaintiff cannot rely on conclusory allegations or recitations of the elements of an offense to survive a motion to dismiss. *Id.*

## Discussion

### I. Fraud

Plaintiffs assert that Defendant fraudulently concealed that the development was unlikely to be completed. Plaintiffs assert that Defendant had a duty to disclose the Developers' financial condition because it was responsible for approving the conversion and had a pecuniary interest in the sale of the condominiums. In addition, Plaintiffs assert that Defendant had a duty to disclose the Development's financial situation based upon the duty, under Louisiana law, to conform to the standard of conduct of a reasonable person in similar circumstances. Defendant asserts that it had no duty to disclose—and in fact were legally barred from disclosing—the Developers' financial condition.

Under Louisiana law, a finding of fraud may be premised on silence or suppression of the truth only if the party had a duty to disclose the omitted information. *America's Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d

3

180, 186 (5th Cir. 1997). And under Louisiana law, banks ordinarily owe no duty to third parties. *B.R. Eubanks, M.D. v. FDIC*, 977 F.2d 166, 170 n. 3 (5th Cir. 1992). Moreover, courts have found that a bank owes no duty to disclose the financial condition of one of its customers to a third party, despite that the bank's customer may cause injury to the third party. *See, e.g.*, *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1054 (La. Ct. App. 4th Cir. 1995) (finding that a bank owed no duty to third parties to investigate the financial legitimacy of a customer who engaged in a ponzi scheme because there was no written agreement between the bank and the third parties); *Glass v. The Berkshire Dev.*, 612 So. 2d 749, 753 (La. Ct. App. 5th Cir. 1992) (finding that "[u]nder Louisiana law a bank owes no duty to a third person with whom a bank customer does business."). Indeed, banks in Louisiana are subject to liability for disclosing a customer's financial condition unless the party files a disclosure demand and is approved. La. Rev. Stat. Ann. § 6:333.

The Court finds that Plaintiffs' fraud claim must be dismissed. In order for a party to be liable for a fraudulent omission, the party must have a duty to disclose the omitted information. *America's Favorite Chicken Co.*, 130 F.3d at 186. More particularly, absent a written agreement, a bank has no duty to disclose the financial condition of one of its customers even though that customer might cause injury to a third party. *See Guidry*, 661 So. 2d at 1054. Plaintiffs' assertion that Defendant owed a duty of disclosure simply because it had a pecuniary interest in the Developers sale of condominiums is not supported by

4

case law.  In addition, Defendant had no duty of disclosure by virtue of its duty to act as a reasonable person under the circumstances.  Here, Defendant, a bank, had no duty of disclosure to third parties and by revealing the Developers' financial condition, it would be subjecting itself to liability under Louisiana Revised Statute 6:333.  Certainly, under these "circumstances" revealing the information would not be "reasonable."

## II. Negligent Representation

Plaintiffs assert that by reviewing and approving the conversion and the marketing documents associated with the condominium sale, Defendant represented that the Developers had the financial wherewithal to complete the project.  Defendant asserts that it had no duty to disclose—and in fact were legally barred from disclosing—the Developers' financial condition and that it nonetheless made no representation as to their financial condition.

Under Louisiana law, a finding of negligent representation requires that the party have a duty to supply correct information.  *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015 (La. 1993).  *See, e.g.*, *Priola Constr. Corp. v. Profast Dev. Grp., Inc.*, 21 So. 3d 456, 458 (La. Ct. App. 3d Cir. 2009) (dismissing on summary judgment a third party's negligent misrepresentation claim against a lender whose employee erroneously told the third party with whom its customer had contracted that the lender was going to approve the customer's loan).

The Court finds that Plaintiffs' negligent misrepresentation claim should be dismissed. Again, Defendant simply had no duty to provide Plaintiffs with information as to the Developers' financial condition. *Barrie*, 625 So. 2d at 1015.

### III. Unjust Enrichment

Plaintiffs assert that Defendant was unjustly enriched insofar as it received $10 million of the proceeds from the condominium sales in exchange for its approval of the conversion and the power of attorney over the development. Defendant asserts that Plaintiffs' unjust enrichment claim must be dismissed because it was not enriched "without cause" and there is no connection between the representation and Plaintiffs' loss, as is required under Louisiana law.

Under Louisiana law, a person is liable if he is enriched without cause at the expense of another person. La. Civ. Code art. 2298. Louisiana courts have established five elements for a claim of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) the plaintiff has no other remedy at law. *Minyard v. Curtis Prods., Inc.*, 251 La. 625, 651-52 (La. 1968). For purposes of unjust enrichment the term "without cause" excludes "cases in which the enrichment results from a valid juridical act or the law." La. Civ. Code art. 2298. That is, if the enrichee is "enriched" as a result of a valid contract with a third party, the alleged impoverishee will have no unjust enrichment claim. *Pilgrim Life Ins. Co. of Am. v. American Bank & Trust Co. of Opelousas*, 542 So. 2d 804, 807 (La. Ct.

6

App. 3d Cir. 1989) (stating that "an enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between . . . a third party and the enrichee").

The Court finds that Plaintiffs' unjust enrichment claim must be dismissed. Defendant received $10 million in proceeds from the sale of the condominiums only as a result of its contract with the Developers and not from any direct transaction with Plaintiffs. As such, its enrichment was not "without cause." La. Civ. Code art. 2298; *Pilgrim Life Ins. Co. of Am.*, 542 So. 2d at 807.

### IV. Detrimental Reliance

Plaintiffs assert that they detrimentally relied on Defendant's approval of the conversion as a tacit endorsement of the Developer's financial condition and the viability of the project as a whole. Defendant asserts that Plaintiffs cannot establish all of the elements of their detrimental reliance claim because it made no affirmative act on which Plaintiffs could have reasonably relied.

Under Louisiana law, a claim for detrimental reliance requires (1) a representation by conduct or word; (2) reasonable reliance on the representation or word; and (3) a detrimental change in position due to the reliance. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 37 (La. 2005). Louisiana law disfavors the application of detrimental reliance, and courts are instructed to strictly examine such claims. *Himel Motor Supply of Lafayette, Inc. v. Genuine Parts Co.*, 2011 WL 309622, at *4 (La. Ct. App. 3d Cir. Feb. 2, 2011). The primary inquiry in such cases is "not whether the parties intended to perform, but,

instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it." *Suire*, 907 So. 2d at 37. Generally, speaking, the "representation by word or conduct" element requires an affirmative act by the defendant. *Oliver v. Cent. Bank*, 658 So. 2d 1316, 1323 (La. Ct. App. 2d Cir. 1995). Where "there is no representation, there can be no detrimental reliance." *Ill. Cent. Gulf R.R. Co. v. R.R. Land, Inc.*, 988 F.2d 1397, 1407 n. 25 (5th Cir. 1993). Moreover, though detrimental reliance may be premised upon an omission, many courts—in furtherance of Louisiana's disfavor of such claims—find that reliance in the absence of a specific promise is unreasonable. *See, e.g.*, *Himel Motor Supply*, 2011 WL 309622, at *4.

The Court finds that Plaintiffs' detrimental reliance claim must be dismissed. Again, because detrimental reliance claims are disfavored under Louisiana law, the Court must apply the doctrine strictly. *Suire*, 907 So. 2d at 37. Here, Plaintiffs assert that Defendant "represented" to them that the Developers were in sound financial condition and that the project would be completed by approving the conversion and the marketing documents. This assertion is problematic for a number of reasons. First, Defendant's conduct can hardly be said to be a "representation." More importantly, any such "representation" was not made directly to Plaintiffs. Moreover, there is no indication that Defendant, insofar as they made a "representation," did so with the expectation that Plaintiffs would rely on it. *Suire*, 907 So. 2d at 37. Finally, to the extent that Defendant did make a representation and Plaintiffs relied upon it, Plaintiffs' reliance thereon

was not reasonable. *Himel Motor Supply*, 2011 WL 309622, at *4. To reach any other conclusion would mean that lenders tacitly promise the success of their customers' projects, thereby exposing themselves to liability in the event they do not succeed. Plaintiffs have pointed to no law—and this Court can find none—advocating such a tenuous position.

## Conclusion

Accordingly, the Court hereby GRANTS Defendant's Motion (doc. 9) to Dismiss as to all of Plaintiffs' claims.

Signed in Baton Rouge, LA this 25th day of July, 2011.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**